IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CANDACE Y. FORD, | : | |
| Plaintiff, | : | Case No. 3:10cv00243 |
| vs. | : | District Judge Thomas M. Rose<br>Magistrate Judge Sharon L. Ovington |
| MIAMI VALLEY HOSPITAL/<br>PREMIER HEALTH PARTNERS,<br>*et al.*, | : | |
| | : | |
| Defendants. | : | |

# REPORT AND RECOMMENDATIONS[1]

Plaintiff Candace Y. Ford, a resident of Dayton, Ohio, brings this case *pro se* naming the following defendants: Miami Valley Hospital/Premier Health Partners, Morris Brown, M.D.; John H. Boyles, M.D.; Jennifer Phillips, APRN, DC; Bruce A. Brumfiel, MD.; Edward Thomas, M.D.; and Eric Schaub, MD.

The Court previously granted Plaintiff's Application to Proceed *in forma pauperis* under 28 U.S.C. §1915. The case is before the Court for a *sua sponte* review to determine whether Plaintiff's Complaint, or any portion of it, should be dismissed because it is frivolous, malicious, or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B). If the Complaint raises a claim with an arguable or rational

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

basis in fact or law, it is neither frivolous nor malicious, and it may not be dismissed *sua sponte*. *Brand v. Motley*, 526 F.3d 921, 923-24 (6th Cir. 2008); *see Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). A Complaint has no arguable factual basis when its allegations are "fantastic or delusional." *Brand*, 526 F.3d at 923 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327-28, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)); *see Lawler*, 898 F.2d at 1199. A Complaint has no arguable legal basis when it presents "indisputably meritless" legal theories – for example, when the defendant is immune from suit or when the plaintiff claims a violation of a legal interest which clearly does not exist. *See Neitzke,* 490 U.S. at 327-28; *see also Brand*, 526 F.3d at 923.

Determining whether a Complaint fails to state a claim upon which relief may be granted starts by accepting the plaintiff's allegations as true and construing the Complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin,* 551 F.3d 461, 466 (6th Cir. 2009). "[A] complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 1965, 167 L.Ed.2d 929 (2007)).

Plaintiff explains that she was previously employed by Miami Valley Hospital/Premier Health Partners. Plaintiff's Amended Complaint identifies five Counts and alleges in pertinent part as follows:

> **Count I: Disability**[.] I am disabled as a result of chemical exposure

assaults (over 150 times beginning in January 2008 until September 2008).... There has been an attempt to coordinate a cover-up by Miami Valley Hospital and my former doctor, Morris Brown. I now have increased sensitivity to all kinds of chemical. Chemicals make my face, eyes, eyelids, nose burn, some vision loss in my left eye, my thumb and two fingers on my left hand hurt when I'm exposed to too many chemicals, my left foot senses the cold and I develop left sided abdominal pain when exposed to too many chemicals. Most of my injuries are on the left side.

**Count II: Medical Malpractice**[.] My former Miami Valley Hospital's Supervisors Teresa Randall, Marilyn Pugh, Jessica (Marcy) Scheibelhut presented in my first Workers' Compensation hearing and OCRC and EEOC investigations with phony floor plans, a phony Air Quality Report (7/7/08 is phony, 6/23/08 [is] still missing), falsified ER visits (combined my 5/28/08 and 7/3/08 ER visits to make it look like there was once [sic], phony affidavits illegally notarized by ... my supervisor Teresa Randall who was named in my OCRC complaint.

My former doctor, Morris Brown referred me to several doctors who helped cover up my injuries by falsifying my medical records....

As a result my medical records have been grossly falsified....[2]

**Count III: Retaliation**[.] I wrote a letter complaining about the toxic chemicals to Maryann Davis after she told me, 'if you catch them, tell them to stop.' I suffered retaliation from Maryann Davis and Jessica (Marcy) Scheibelhut when I told the I was going to speak to someone about the toxic chemicals especially the drug incident. After Maryann retired, Teresa Randall along with Jessica March Schiebelhut began writing me up and I was exposed to even more chemicals until I went out on sick leave [on] July 18, [20]08. I tried to come back to work on 8/25/08 and was hit with toxic chemicals again. I went out again on sick leave until 9/8/09. Eventually I was terminated because I refused to sit in toxic chemicals, thus my stats went down.

**Count IV: Racial Discrimination**: Because of my race, African American, I was discriminated against. When I complained about the toxic

---

[2] Plaintiff's Amended Complaint identifies certain physicians who allegedly falsified her medical records on specific occasions. (Doc. #3 at 18).

>chemicals that my Caucasian co-workers were releasing in my work space, nothing was done. When my Caucasian co-workers complained about something they accused me of doing, I was written up. Marcy offered to come by and started making blowing sounds and laughs while talking about the chemical exposures. Teresa Randall said, "if it were me and I felt someone was trying to poison me, I wouldn't be here.' [T]hey did nothing to address the assaults. They hid behind a phony Air Quality Report.
>
>**Count V Assault, Libel, Slander:** I have been assaulted with chemicals that heave taken away the freedoms I previously enjoyed: my ability to work independently without any restrictions, inability to use chemicals that once were not a problem for me to use, not being able to stay inside places for very long without starting to feel the chemicals in the atmosphere and the cold air conditioning. I've been slandered by the false notes written in my medical records that were presented in my Workers' Compensation hearings, OCRC, EEOC investigations, some of which were very malicious.

(Doc. #3 at 18-19) (footnote added; bold in original; underlines removed).

Plaintiff's factual assertions are rational rather than fantastic or delusional. *See Brand*, 526 F.3d at 923; *see also Jones v. Schmaker*, 1999 WL 1252870 at 1 (6th Cir. 1999) ("Examples of claims lacking rational facts include a prisoner's assertion that Robin Hood and his Merry Men deprived prisoners of their access to mail or that a genie granted a warden's wish to deny prisoners any access to legal texts." (citing *Lawler,* 898 F.2d at 1198-99)). Her Amended Complaint is therefore safe from dismissal under 28 U.S.C. §1915(e)(2)(B)(i).

Plaintiff's factual allegations – when accepted as true and construed liberally in her favor – fail to state an arguable federal constitutional or statutory claim. Counts I, III, and IV are Plaintiff's best candidates for stating a federal claim.

Assuming, as asserted in Count I, that Plaintiff was "disabled" and harmed by

4

repeated and frequent (150) "exposure assaults" to toxic chemicals during her employment with Miami Valley Hospital/Premier Health Partners, these allegations are insufficient to demonstrate that any of the named defendants discriminated against her on the basis of a disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111-12117.  Her allegations do not reveal that Miami Valley Hospital/Premier Health Partners took any adverse employment action against her because of her disability or because it perceived she was under a disability.  Instead, Plaintiff's "exposure assaults" to toxic chemicals at most sound in state-law claims of assault or employer intentional tort.  *See, e.g.,* Ohio Rev. Code §2745.01; *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 927 N.E.2d 1066 (2010).

Plaintiff's claim of retaliation (Count III) rests on two main allegations: (1) she was "written up" because she "was going to speak to someone about the toxic chemicals especially the drug incident," (doc. #4 at 18); and (2) she was terminated because she "refused to sit in the toxic chemicals...."  *Id*.  Plaintiff's statement about her intention to speak to someone, without more, does not mean that she actually spoke to someone other than her supervisors about the toxic chemicals or engaged in some activity protected by the ADA.  Similarly, her allegation that she was "written up," without additional information, is too vague to show that she suffered an adverse employment action.  Plaintiff does not allege sufficient facts to show that her refusal to sit in toxic chemicals – an altogether sensible refusal – constituted an activity protected by the ADA.  As a result, Plaintiff's allegations – when accepted as true and liberally construed in her favor – do

not "suggest a 'right to relief above a speculative level." *Tackett*, 561 F.3d at 488 (quoting *Twombly*, 550 U.S. at ___, 127 S.Ct. at 1974, 1965).

Plaintiff's claim of racial discrimination (Count IV) is conclusory. She alleges, for instance, that she was discriminated against because of her race, African American. She does not, however, allege facts indicating that one or more of the defendants took an adverse employment action against her because of her race. Her allegation that Caucasian workers released toxic chemicals into her work area is insufficient to show race discrimination because the Amended Complaint lacks allegations tending to show that Caucasian employees released toxic chemicals into her work area because of her race.

In addition, Plaintiff's race discrimination claim, in essence, alleges the Caucasian employees were better treated than Plaintiff because she was "written up" as a result of Caucasian employees' complaints about her, while nothing was done when she complained about the Caucasian employees' release of toxic chemicals into her work area. More is needed to state a plausible race discrimination claim because the Amended Complaint is silent about the nature of her purported wrongdoing or mistakes (as the Caucasian employees reported). Without such information, no meaningful comparison can be made between her purported wrongdoing and the consequences, and in turn, no reasonable inference arises from the more favorable treatment granted Caucasian employees compared to the less favorable treatment Plaintiff endured. Put more generally, the Amended Complaint does not state a plausible federal claim for relief because no reasonable inference of race discrimination arises from the general

circumstances alleged in Count IV.

As to the remaining Counts in the Amended Complaint (Counts II and V), Plaintiff seeks to raise state law claims of medical malpractice, assault, libel, and slander rather than federal claims. In the absence of a plausible federal claim, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. §1367(c)(3).

Accordingly, Plaintiff's Amended Complaint does not state a plausible, non-speculative federal claim for relief and must therefore be dismissed under 28 U.S.C. §1915(e)(2)(B)(ii).

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's Amended Complaint be DISMISSED without prejudice to renewal in state court;

2. The Court certify pursuant to 28 U.S.C. §1915(a)(3) that for the foregoing reasons an appeal of an Order adopting this Report and Recommendations would not be taken in good faith, and consequently, leave for Plaintiff to appeal *in forma pauperis* should be denied; and

3. The case be terminated on the docket of this Court.


September 3, 2010      s/Sharon L. Ovington  
    Sharon L. Ovington  
    United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).